This opinion is uncorrected and subject to revision before publication in the New York Reports.
-----------------------------------------------------------------

No. 109
The People &c.,
            Respondent,
        v.
Charles Smith,
            Appellant.
-----------------------
No. 110
The People &c.,
            Respondent,
        v.
Tyrell Ingram,
            Appellant.
-----------------------
No. 111
The People &c.,
            Respondent,
        v.
Isma McGhee,
Also Known as Izzy,
            Appellant.

Case No. 109:
        Claudia Flores, for appellant.
        Patricia Curran, for respondent.
        New York State Association of Criminal Defense Lawyers;
Legal Aid Society, _amici_ _curiae_.


Case No. 110:
        Elsa Mitsoglou, for appellant.
        Raffaelina Gianfrancesco, for respondent.
        Legal Aid Society, _amicus_ _curiae_.


Case No. 111:
        Mark W. Zeno, for appellant.
        Sylvia Wertheimer, for respondent.
        Legal Aid Society, _amicus_ _curiae_.

ABDUS-SALAAM, J.:

The primary issue in these appeals is whether the trial courts abused their discretion in precluding any cross-examination into allegations of a law enforcement officer's prior misconduct made in an unrelated federal lawsuit. These cases stand for the unremarkable proposition that law enforcement witnesses should be treated in the same manner as any other prosecution witness for purposes of cross-examination. We have indicated as much in prior cases (see People v Garrett (23 NY3d 878 [2014]; People v Gissendanner 48 NY2d 543 [1979]), as have

-1-

the Appellate Divisions considering this issue (see e.g. People v Daley, 9 AD3d 601 [3rd Dept 2004]; People v Andrew, 54 AD3d 618 [1st Dept 2008]; People v Jones, 193 AD2d 696 [2d Dept 1993]). Accordingly, we apply the well-established rules governing the use of this type of impeachment material to the specific facts of each of these three cases.

## I.

The United States Supreme Court has stated that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested" (Davis v Alaska, 415 US 308, 316 [1974]) and that the right of cross-examination is "implicit in the constitutional right of confrontation, and helps assure the accuracy of the truth determination process" (Chambers v Mississippi, 410 US 284, 295 [1973][internal quotation marks and citation omitted]). While "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (Delaware v Fensterer, 474 US 15, 20 [1985]), this Court has observed in Gissendanner (48 NY2d 543) and People v McGee (68 NY2d 328 [1986]) that restrictions on the right to cross-examine key prosecution witnesses may deprive defendants of the means to discredit the witnesses and cast doubt on the prosecution's case.  It is elementary that

> "impeachment is a particular form of cross-
> examination whose purpose is, in part, to

discredit the witness and to persuade the
fact finder that the witness is not being
truthful. One traditional method of
accomplishing these ends is to demonstrate
through questioning that the witness has been
guilty of prior immoral, vicious or criminal
conduct bearing on credibility" (People v
Walker, 83 NY2d at 461 [1994][internal
citations omitted]).

Given these central principles, prosecution witnesses -
- and indeed, even a testifying defendant -- may be cross-
examined on "prior specific criminal, vicious or immoral
conduct," provided that "the nature of such conduct or the
circumstances in which it occurred bear logically and reasonably
on the issue of credibility" (People v Sandoval, 34 NY2d 371, 376
[1974]). Of course, where a witness other than the defendant
testifies, the court, in considering the parameters of
permissible cross-examination, is not focused on protecting the
rights of the accused, and on the concern that permitting
evidence of bad conduct will serve merely to demonstrate a
propensity to commit the crime charged (see People v Ocasio, 47
NY2d 55, 58 [1979]). After all, for a nondefendant witness,
"neither conviction nor vindication, imprisonment nor freedom,
hangs in the balance" (id. at 59). However, in all cases the
trial court retains broad discretion to weigh the probative value
of evidence of prior bad acts against the possibility that it
"would confuse the main issue and mislead the jury . . . or
create substantial danger of undue prejudice to one of the
parties"(People v Corby, 6 NY3d 231, 234-235 [2005][internal

-3-

quotation marks and citation omitted]; see also People v Harrell, 209 AD2d 160, 160 [1st Dept 1994], affd 86 NY2d 806 [1995]; see generally People v Dawson, 50 NY2d 311, 322 [1980]; People v Gissendanner, 48 NY2d at 548 [1979]; Sandoval, 34 NY2d at 374 ["(t)he nature and extent of cross-examination have always been subject to the sound discretion of the Trial Judge"]).

In Garrett, we concluded that "civil allegations" of misconduct in a federal lawsuit filed against a law enforcement agent "were favorable to defendant as impeachment evidence" (Garrett, 23 NY3d at 886), thereby necessarily determining that such allegations can bear on a law enforcement officer's credibility as a witness. The defendant in Garrett argued in his criminal case that one detective in particular "coerced him into making a false confession" and "[t]he federal complaint made similar allegations against [the same detective]: although it did not explicitly allege that the confession [the same detective] procured was false, the complaint described coercive tactics [the same detective] allegedly used to extract a confession against the plaintiff's will" (id.). This Court noted that the evidence "favored defendant's false confession theory" in that case (id.). Nonetheless, in Garrett, we noted that the trial judge could have exercised discretion and precluded inquiry into this "favorable" impeachment evidence (id. at 892).

Our recognition of the relevance of prior bad acts that have been alleged in court filings, but not proven at trial, is

consistent with our precedent; we have previously decided that there is no prohibition against cross-examining a witness about bad acts that have never been formally proven at a trial (see People v Sorge, 301 NY 198, 201 [1950]).  Likewise, a police witness's prior bad act that similarly has not been proven in a criminal prosecution or other court proceeding also can be proper fodder for cross-examination.  Nor do allegations of police misconduct lose their relevance to a police witness's credibility simply because the alleged bad acts are not regarded in all cases as criminal or immoral.  Indeed, we have approved cross-examination on a defendant's use of aliases and other suspect, but not criminal, conduct because

> "even where the proof falls outside the conventional category of immoral, vicious or criminal acts, it may be a proper subject for impeachment questioning where it demonstrates an untruthful bent or significantly reveals a willingness . . . to place the advancement of his individual self-interest ahead of principle or of the interests of society." Walker, 83 NY2d at 461 [1984][internal quotation marks and citations omitted]).

As we indicated in Garrett, and emphasize here, law enforcement witnesses should be treated in the same manner as any other witness for purposes of cross-examination.  The same standard for good faith basis and specific allegations relevant to credibility applies -- as does the same broad latitude to preclude or limit cross-examination.

Where a lawsuit has not resulted in an adverse finding against a police officer, as is the case with these three

appeals, defendants should not be permitted to ask a witness if he or she has been sued,[1] if the case was settled (unless there was an admission of wrongdoing) or if the criminal charges related to the plaintiffs in those actions were dismissed. However, subject to the trial court's discretion, defendants should be permitted to ask questions based on the specific allegations of the lawsuit if the allegations are relevant to the credibility of the witness.

From the above, the logical framework for analysis of the issue is clear.  First, counsel must present a good faith basis for inquiring, namely the lawsuit relied upon; second, specific allegations that are relevant to the credibility of the law enforcement witness must be identified; and third, the trial judge exercises discretion in assessing whether inquiry into such allegations would confuse or mislead the jury, or create a substantial risk of undue prejudice to the parties (see Delaware v Van Arsdall, 475 US 673, 679 [1986]; see People v Harrell, 209 AD2d 160, 160 [1st Dept 1994]).

A federal lawsuit alleging tortious conduct committed by law enforcement officials testifying as prosecution witnesses, provides an appropriate good faith basis for raising the issue.

---

[1]The fact that a lawsuit has been commenced -- like the fact of an arrest -- has little to no probative value with regard to the officer's credibility (see People v Miller, 91 NY2d 372, 380 [1998]; People v Rodriguez, 38 NY2d 95, 101 [1975]; People v Morrison, 194 NY 175, 178 [1909]).

Even so, the specific allegations must be relevant to that witness's credibility (see People v Garrett, supra; People v Daley, supra [where defendant was convicted of promoting prison contraband and menacing in the second degree arising out of an altercation with a correction officer, it was error not to permit the defendant to cross-examine the officer about circumstances underlying a federal lawsuit by another inmate accusing him of assault]; People v Jones, supra [where defendant was convicted of criminal possession of a weapon in the third degree, and defendant claimed he had been framed, it was error to prevent cross-examination of police witness about allegations in lawsuits of police brutality, false arrest and excessive force]); compare Andrew, supra at 618 [court properly exercised discretion not to permit cross-examination of police witness regarding acts alleged in lawsuit where complaint "did not allege, or even support an inference, that [ ] detective personally engaged in any specific misconduct or acted with knowledge of the misconduct of other officers."]).

Nevertheless, whether to permit inquiry into such prior bad acts for impeachment purposes are discretionary calls "for the trial courts and fact-reviewing intermediate courts, and . . . generally no further review by this Court is warranted" (People v Walker, 83 NY2d at 458 [internal citations omitted]). "Because the trial courts have inherent power to control the scope of cross-examination and the use of prior bad acts is a

generically accepted practice in that context, this Court will only intervene where the trial court ha[s] either abused its discretion or exercised none at all (id. at 459 [internal quotation marks and citation omitted]).

Applying those principles to these cases, we hold that the trial courts in Ingram and McGhee abused their discretion and effectively imposed an improper categorical prohibition against permissible cross-examination, although that error was harmless in McGhee. While it is a closer question with respect to Smith, any error in that case was likewise harmless.

II.

*People v Smith*

Defendant appeals from two judgments of conviction -- one for resisting arrest (see Penal Law § 205.30) and the other for criminal sale of a controlled substance in the third degree (see Penal Law § 220.39[1]). At the first trial, three detectives, members of the Manhattan Borough South Narcotics Squad, testified about a drug transaction conducted between defendant and an individual named Stevenson in midtown Manhattan. Stevenson handed cash to defendant and in exchange, defendant gave Stevenson what appeared to be a small object that was later determined to be crack cocaine. The jury reached a verdict on the resisting arrest charge but could not reach a verdict on the narcotics charges, necessitating the second trial.

Prior to commencement of the first trial,[2] defendant made a motion in limine requesting permission to inquire about lawsuits filed against Detectives Zambrano and Lotufo, two of the three detectives who testified at trial. He explained to the court that there were a number of federal civil rights lawsuits against those officers under very similar facts where they made narcotics arrests, the criminal cases were then dropped, the individuals who were arrested commenced lawsuits and the civil cases were settled. The trial judge responded "No." Defense counsel argued that this went directly to the officers' credibility. In particular, he wanted to ask one of the officers if he had been involved in the arrest of a certain individual, whether he had said that the individual was "guilty" of a drug sale, and whether the case was later dropped. The trial court said "absolutely not" and that, among other things, "[w]e don't know why the [state] cases were dropped" and "I don't know why they settled the [federal cases]" and this had nothing to do with the officers' credibility. After further argument, during which defense counsel again tied the size of the monetary settlements and the fact that the underlying criminal cases against plaintiffs were dropped to his proposed inquiry, the court foreclosed any line of questioning about the acts alleged in the

_____

[2]We note that defense counsel was not required to make a proffer prior to trial, but could have chosen simply to question the detectives on cross-examination, and then upon any objection by the People, make a showing of relevance and good faith.

lawsuits, and defendant noted his objection for the record.
Defendant did not raise the issue on his retrial where another
Judge presided.

The Appellate Division affirmed (122 AD3d 456 [1st Dept
2014]. A Judge of this Court granted leave (24 NY3d 1123
[2015]).

While defense counsel *did* seek to ask about dismissals
of charges and settlements of the lawsuits, and the court
properly prohibited this inquiry, counsel also proposed one
question in the midst of the inappropriate questions, that was
appropriate -- namely, whether the witness had falsely arrested
the plaintiff in one of the lawsuits. This may have been
sufficient to advise the court that counsel wished to ask about
the underlying facts of cases similar to defendant's. The
colloquy may also be read as a clear indication that the trial
judge would not have entertained any proposed line of cross-
examination relating to those allegations. However, even
assuming that the court abused its discretion in precluding this
line of cross-examination, harmless error analysis applies to
this type of error, and any error was harmless.

As noted, the People called three plainclothes
detectives -- King, Zambrano and Lotufo -- to testify about a
drug transaction that they observed between Stevenson and
defendant. King and Zambrano each testified that they were both
following defendant and Stevenson and that after they observed

the transaction, they approached defendant and identified themselves as police officers. King said that Zambrano got there first, and defendant was resisting and not complying with Zambrano.  According to both King and Zambrano, there was a struggle and all three of them hit the ground.  Zambrano testified that when he tried to grab defendant's arm, defendant resisted and lifted his hand toward his mouth trying to eat something; that item fell to the ground and it appeared to be a small bag of crack.  Leaving aside the testimony of Detective Zambrano, whom defendant sought to impeach, the proof of defendant's guilt of resisting arrest, through the testimony of Detective King, who was not a party to the federal lawsuits and therefore could not be cross-examined about the underlying bad acts, was overwhelming, and there was no significant probability that the jury would have acquitted if defendant had been permitted to impeach Zambrano (see generally People v Kello, 96 NY2d 740, 744 [2001]; People v Crimmins, 36 NY2d 230, 240-241 [1975]).

As for the second trial, where defendant was convicted of criminal sale of a controlled substance in the third degree, his argument about cross-examination of the police witnesses was not raised before the trial court and was therefore not preserved (see People v Malizia, 62 NY2d 755, 757-58 [1984]).  People v Finch (23 NY3d 408 [2014]), cited by defendant, is inapposite. Defendant was required to make his evidentiary arguments in the

specific context of the retrial to alert the trial judge to his proposed line of questioning (see People v Evans, 94 NY2d 499, 505 [2000]).

We have considered defendant's remaining contention and conclude that it lacks merit.

### III.

*People v Ingram*

Defendant was convicted of criminal possession of a weapon in the second degree (see Penal Law § 265.03). To summarize the People's case, a Bronx Narcotics Field Team had been conducting a buy-and-bust operation during the early morning hours of September 29, 2008. The team members were Sergeant Deevy and Detectives Schaffer, Sanchez, Perpall, Roman, Batista and Howell. The team had already arrested four people and sent their undercover officer home. Still remaining in the area, Deevy and Schaffer saw defendant running full speed while holding a large bulge at his waistband. Defendant kept looking back while he was running. Schaffer, who was driving, pulled their unmarked van up next to him, and Deevy displayed his shield and told defendant not to move. Defendant ran back in the direction from which he came, so Deevy got out of the van and chased him while Schaffer followed in the van. Deevy ran in between two parked cars to intercept defendant, and defendant pulled out a gun and fired at Deevy. Deevy fired back. Neither one was shot. Schaffer ran up, grabbed the gun out of defendant's hand and

threw the gun approximately five feet away.  A struggle ensued involving Deevy, Schaffer and defendant.

In the meantime, Officers Sanchez and Perpall had received a call from Deevy or Schaffer on the radio saying that a person was running southbound on Vyse Avenue, so they drove to that location.  As they turned left on Vyse Avenue, they heard two gunshots.  They eventually saw Deevy and Schaffer on the ground on top of defendant, and Sanchez saw a gun on the ground by their feet, picked it up, and unloaded it in his hand.  It was a .38 caliber revolver that had four live bullets and one spent casing. Sanchez handed the gun and the ammunition to Batista, a member of the team, who brought it to the precinct.  The ammunition was tested for fingerprints but none were found. While a DNA test and a fingerprint test on the weapon were ordered, they were never performed.

The defense theory of the case was that these officers were "rogue cops" and that because Deevy had fired his weapon for no good reason, the officers fabricated evidence and concocted a false story about the defendant shooting at Deevy in order to protect Deevy.  On the first day of trial, the defense attempted to question Detective Sanchez regarding a lawsuit in which he and the rest of the narcotics field team involved in this case were sued in federal court for civil rights violations by a plaintiff named Marcus Reyes.  After Reyes had been arrested by this narcotics field team and the criminal charges against him were

dismissed, Reyes brought a civil rights lawsuit in 2010 against the narcotics field team alleging that they fabricated evidence, falsely arrested him, used excessive force, and illegally strip searched him.  During cross-examination, defense counsel asked Sanchez if he had ever been sued.  The prosecutor objected on the grounds that being sued was "evidence of nothing," and the court sustained the objection.  There were several colloquies on different days of the trial in which this line of cross-examination was discussed. Defense counsel argued that the entire narcotics team was the subject of a 2010 lawsuit and the allegations of that lawsuit involving false arrest, excessive force, illegal strip search, and fabricated evidence went directly to her theory of the case that these were "rogue cops." Later in the trial, counsel renewed her request to cross-examine about the allegations in the lawsuit, this time with respect to Detective Deevy.  The trial court again denied the application, stating "It's a pending lawsuit. I'm not going to allow any inquiry into that. I find the prejudicial effect far outweighs the probative value at this stage, since it is a pending lawsuit."

The Appellate Division affirmed, finding no record support for defendant's assertion that the trial court had prevented him from asking the witness about relevant alleged bad acts underlying the lawsuit, rather than the existence of the suit itself.  The Appellate Division likewise declared that the

record indicated no good faith basis for the proposed line of questioning (125 AD3d 558 [1st Dept 2015]).  A Judge of this Court granted leave (26 NY3d 930 [2015]).

We disagree with the Appellate Division.  The record reveals that during the sidebar conferences, which followed the judge's initial ruling sustaining the People's objection, defendant's trial counsel clearly indicated that she was interested in getting to the allegations of specific facts underlying the federal lawsuit.  She referred the court to the cases of People v Santos (306 AD2d 1997, 198 [1st Dept 2003], affd 1 NY3d 548 2003]) and People v Marzed (161 Misc 2d 309 [1993]) which related to prior bad acts of law enforcement witnesses.  Based on defense counsel's arguments and her citation to these cases, it is evident that counsel sought to cross-examine the People's witnesses about the specific prior bad acts underlying the lawsuits filed against them for impeachment purposes.

Equally erroneous was the related component of the Appellate Division's determination of the propriety of the proposed cross-examination.  Specific allegations of prior bad acts in a federal lawsuit against a particular witness do establish a good faith basis for cross-examining that witness about the misconduct.  Because defendant had the necessary good faith basis to ask about the prior bad acts alleged in the complaint, and there was no danger that such cross-examination

would go to anything other than the police officers' credibility, the trial court abused its discretion in not allowing cross-examination into the acts alleged in the federal lawsuit based on the reasoning that the prejudicial value outweighed the probative value merely because the lawsuit was still pending.  While we recognize that the scope of cross-examination rests in the sound discretion of the trial judge (see Gissendanner 48 NY2d at 548), in this case, it was an abuse of discretion to restrict defendant's right to cross-examine key prosecution witnesses based on a finding that some unidentified prejudice outweighed the probative value of the questions.  The questions had a good faith basis and there is no suggestion in this record that the main issues would have been obscured and the jury confused (compare People v Harrell, 209 AD2d 160 [1994], affd 86 NY2d 806 [1995]).

The error was not harmless.  The evidence of defendant's guilt of criminal possession of a weapon in the third degree hinged on the testimony of Deevy and Schaffer, who said that defendant had possessed a gun.  Sanchez testified that when he and Perpall arrived, the gun was on the ground.  The gun was not connected to defendant by any forensic evidence.  Defendant was not permitted to cross-examine those witnesses regarding the acts underlying the federal lawsuit, which would have been relevant to the officers' credibility.  The proof of defendant's guilt was not overwhelming and we cannot say that there was no

significant probability that the jury would have acquitted if defendant had been permitted to impeach these witnesses.

IV.

*People v McGhee*

Defendant was convicted of 10 counts of criminal sale of a controlled substance in the third degree (see Penal Law § 220.39[1]). In short, the People's case was that as part of a long-term investigation into drug trafficking and other criminal activity at a housing project in Manhattan, multiple undercover detectives purchased crack cocaine from defendant over an extended period of time. Detective Rivera was the lead detective on the investigation. He testified that his duties included coordinating the investigation operations generally, processing the paperwork, and handling the arrest which ended the investigation. Rivera explained that four undercover officers were assigned to make purchases at various points during the investigation.

Prior to commencement of the trial, defense counsel stated that he wanted to question Rivera about allegations that he "arrested people who committed no crimes, essentially false arrest allegations" against him and other officers in three lawsuits. He explained to the trial court that he wanted to ask Rivera questions regarding prior bad and immoral acts, and that the basis for the questions arose out of lawsuits that had been filed with Rivera as a named defendant along with other officers

in the New York City Police Department.  Counsel clarified that
he did not intend to ask Rivera whether he was subject to the
suit itself because he understood that generally that would be
irrelevant; however, he believed that the existence of the
lawsuits gave him a good faith basis to ask whether or not Rivera
was involved in the arrest of the named federal plaintiff, if
such an arrest took place and "is it, in fact, that those
plaintiffs committed no crimes and he participated in a false
arrest."  Counsel further explained that most of the questions
would go to "the heart of the defense" -- namely, that in three
lawsuits there were allegations that the officers arrested people
who committed no crimes.

The court denied the application, explaining the basis
of its decision to prevent the proposed questioning with
reference to relevance and good faith basis.  The Appellate
Division affirmed, concluding that defendant "failed to establish
a good faith basis for eliciting the underlying facts of these
lawsuits under the theory that they involved prior bad acts by
this detective bearing on his credibility" and that any error was
harmless (125 AD3d 537 [1st Dept 2015]).  A Judge of this Court
granted leave (26 NY3d 968 [2015]).

Contrary to the Appellate Division's conclusion,
defense counsel had a good faith basis to ask Detective Rivera
about the prior false arrests based upon the specific allegations

of the federal lawsuit.[3]  And, participation in a false arrest was relevant to the jury's assessment of the witness's credibility.  Given the clearly permissible parameters of the cross-examination as set forth by defense counsel, the trial court abused its discretion in prohibiting this proper line of questioning.

The error in precluding this line of questioning though, was harmless.  Overwhelming proof of guilt was provided by the identification testimony of the four different undercover officers who collectively transacted all ten of the charged sales.  Detective Rivera merely supervised the undercover officers and gave an overview of the long-term investigation into defendant's drug dealing.  Furthermore, there was no significant probability that the jury would have acquitted defendant had he been permitted to cross-examine Rivera about prior false arrests.

Finally, defendant's arguments regarding the photo array used to identify him by one of the undercover officers and the impropriety of his sentence, lack merit. There is record support for the suppression court's determination of mixed law and fact that the photo array was not unduly suggestive and was fairly constituted (see People v Holley, 26 NY3d 514, 524

---

[3]We reject defendant's argument that the Appellate Division violated the rule set forth in People v Concepcion (17 NY3d 192 [2011] and People v LaFontaine (92 NY2d 470 [1998]) by improperly affirming on the ground that there was no good faith basis (see Garrett, 23 NY3d at 885, n 2, supra).

[2015]).  On the sentencing issue, defendant was sentenced pursuant to Penal Law § 70.70(4) as a second felony drug offender whose prior conviction was a violent felony, based upon a 2003 conviction for criminal possession of a weapon in the third degree under former Penal Law § 265.02(4).  He argues that because his prior conviction was no longer listed as a violent felony in Penal Law § 70.02(1) when he was sentenced for the ten sales in this case, his enhanced sentence was unlawful.  However, not only was third-degree weapon possession under former Penal Law § 265.02(4) classified as a violent felony when defendant incurred that conviction, but the same crime was later reclassified as the more serious offense of criminal possession of a weapon in the second degree (see Penal Law § 265.03 [3]), and was listed as a violent felony offense when defendant was sentenced in this case.  This is in contrast to People v Morse (62 NY2d 205 [1984]), upon which defendant relies, where the predicate crime was not classified as a violent felony offense when committed, but was subsequently so classified.

Accordingly, the order of the Appellate Division in People v Smith should be affirmed; the order of the Appellate Division in People v Ingram should be reversed and a new trial ordered; and the order of the Appellate Division in People v McGhee should be affirmed.

For Case Nos. 109 and 111:  Order affirmed.  Opinion by Judge
Abdus-Salaam.  Chief Judge DiFiore and Judges Pigott, Rivera,
Stein, Fahey and Garcia concur.

For Case No. 110:  Order reversed and a new trial ordered.
Opinion by Judge Abdus-Salaam.  Chief Judge DiFiore and Judges
Pigott, Rivera, Stein, Fahey and Garcia concur.


Decided June 28, 2016