OPINION OF THE COURT
Sam L. Valleriani, J.
Defendant filed a motion seeking an in camera review of Officer Ferrigno’s personnel file. The City of Rochester filed opposition papers.[1] The court conducted oral argument on the matter at which the defendant and the City amplified their positions. Based on the court’s review of counsels’ respective submissions and their oral arguments, the court signed a subpoena duces tecum ordering that the entirety of the contents of Officer Ferrigno’s personnel file be provided to the court for an in camera review pursuant to People v Gissendan *992 ner (48 NY2d 543 [1979]; see Civil Rights Law § 50-a). The defendant and the People have since provided supplemental submissions and made additional oral arguments, which the court has also considered in rendering this decision.

Rosario

As a threshold matter, the defendant contends that Officer Ferrigno’s Professional Standards Section (PSS) testimony as well as any other written or recorded information obtained pursuant to the PSS investigation underlying the instant criminal case is discoverable pursuant to People v Rosario (9 NY2d 286 [1961]). While the court does not agree with defendant’s contention that such information is within the custody and control of the prosecutor simply because it is in the custody and control of the Rochester Police Department (RPD), inasmuch as Officer Ferrigno’s testimony before PSS bore directly on the subject matter of the underlying criminal charges and the Officer is anticipated to testify at trial, the court finds that Officer Ferrigno’s PSS testimony as well as any other written or recorded information obtained from the Officer pursuant to the PSS investigation underlying the instant criminal case is the functional equivalent of Rosario material and, as such, should be provided to the defendant. Likewise, based on the same reasoning, the court further finds that Officer Giancursio’s PSS testimony should be provided to the defendant.
The Lawsuits
The defendant also wishes to cross-examine Officer Ferrigno regarding three lawsuits that were filed against him[2] in federal court in his capacity as an RPD Officer—Turner v City of Rochester; Warr v City of Rochester; Williams v City of Rochester. The law regarding whether defendant may cross-examine Officer Ferrigno regarding the lawsuits is set forth in People v Smith (27 NY3d 652 [2016]). In Smith, the Court of Appeals held that “defendants should be permitted to ask questions based on the specific allegations of the lawsuit if the allegations are relevant to the credibility of the witness” (id. at 662). The analysis is based on a three-part test:
*993 “First, counsel must present a good faith basis for inquiring, namely, the lawsuit relied upon; second, specific allegations . . . relevant to the credibility of the law enforcement witness must be identified; and third, the trial judge exercises discretion in assessing whether inquiry into such allegations would confuse or mislead the jury, or create a substantial risk of undue prejudice to the parties” {id. [citations omitted]).
The evolution of the case law in this area seems to require trial courts to find a tenable nexus between the specific allegations in the lawsuit or alleged misconduct and the officer’s conduct in the underlying criminal allegations in determining relevancy for cross-examination. For example, in Smith, the Court of Appeals, as part of its decision, reversed the Appellate Division, First Department’s decision in People v Ingram (125 AD3d 558 [1st Dept 2015], revd 27 NY3d 652 [2016]), which was decided together with Smith. In Ingram, the First Department affirmed the trial court’s ruling precluding defendant from cross-examining two particular police witnesses—Officers Sanchez and Deevy—in the underlying criminal case regarding a federal lawsuit pending against their narcotics field team alleging excessive force, false arrest, and that they fabricated evidence (see Smith, 27 NY3d at 666). The theory of defense in Ingram was that Officer Deevy, who fired his weapon at defendant Ingram while pursuing him on foot, was part of a group of “rogue cops,” including Officer Sanchez, who fabricated a story that the defendant fired first in order to protect Officer Deevy (see id.). The Court of Appeals held that it was error to preclude defense counsel from cross-examining the Officers regarding the specific allegations of the pending lawsuit for impeachment purposes (id. at 667). In People v Puglisi (44 NY2d 748, 749 [1978]), a narcotics case, the Court of Appeals held that it was error to refuse disclosure to defense counsel for impeachment an officer’s disciplinary file where “defense counsel had information that [the] undercover officer who testified had improperly handled previous ‘buys’ ” (People v Gissendanner, 48 NY2d 543, 549 [1979]). Similarly, in People v Garrett (23 NY3d 878, 886 [2014]), the Court of Appeals held that civil allegations in a federal lawsuit “were favorable to defendant as impeachment evidence” where the allegations “favored defendant’s false confession theory” (see Smith at 661, quoting Garrett). Moreover, in People v Enoe (144 AD3d 1052, 1054 [2d Dept 2016]), the Second Department, citing Smith, reversed *994 the trial court for precluding defendant from cross-examining the officer on the underlying allegations of a federal lawsuit which alleged that the officer previously “falsely arrested an individual on a [gun] possession charge for the purpose of securing overtime compensation and a ‘credit’ for a gun-related arrest” where the criminal case included the officer’s testimony that the defendant possessed a gun. While Smith, Garrett, and Enoe are lawsuit cases, and Gissendanner and Puglisi deal with disclosure of confidential police personnel or disciplinary files, these and related cases all share the common thread of rationalizing the propriety of disclosure of otherwise confidential information protected by Civil Rights Law § 50-a, where allegations of misconduct against a police officer, whether or not resulting in a lawsuit, engender departmental discipline documented in the officer’s personnel file. In balancing a defendant’s constitutional right to confrontation against the government’s competing interest in maintaining confidential information regarding the performance and discipline of police officers, the precedents coalesce in teaching that the police misconduct subject to disclosure must “bear peculiar relevance to the circumstances of the defendant’s case” (see Gissendanner, 48 NY2d at 549; see generally Puglisi, 44 NY2d 748) or provide the officer a motive to falsify (see Gissendanner at 548, citing Davis v Alaska, 415 US 308, 316 [1974]).
“[T]here is no prohibition against cross-examining a witness about bad acts that have never been formally proved at a trial” (Smith, 27 NY3d at 661). Specifically, with respect to police witnesses, the Court of Appeals has emphasized that “law enforcement witnesses should be treated in the same manner as any other witness for purposes of cross-examination” (id. at 661-662). “[A] police witness’s prior bad act that . . . has not been proved in a criminal prosecution or other court proceeding also can be proper fodder for cross-examination” (id. at 661 [emphasis added]). Cross-examination regarding civil allegations against a police officer “favorable” to the defendant is permissible (id., citing Garrett, 23 NY3d at 886; see generally Puglisi, 44 NY2d 748). “Evidence is ‘favorable’ to the accused if it either tends to show that the accused is not guilty or if it impeaches a government witness” (Garrett, 23 NY3d at 886 [emphasis and internal quotation marks added]). “[T]he ‘favorable tendency’ of impeachment evidence should be assessed without regard to the weight of the evidence as a whole” {id. [citations and internal quotation marks omitted]). “In other *995 words, impeachment evidence may be considered favorable to defendant even if it is not material to the defendant’s case” (id.).
Mindful of the above legal framework, the defendant may cross-examine the Officer about the specific allegations relative to excessive or improper force underlying each of the above lawsuits for impeachment purposes. The defense theory here, strikingly similar to the defense theory advanced by defendant Ingram (see Smith, 27 NY3d at 666-667), is that Officer Ferri-gno used excessive and illegal force against the defendant by firing his weapon at him for no good reason, and that the Officer, in turn, fabricated the fact that the defendant shot at him first in order to justify his actions and shield himself from wrongdoing. Likewise here, as in Ingram (see Smith), the defendant’s guilt may hinge heavily, if not entirely, on Officer Ferrigno’s anticipated trial testimony that will presumably purport to establish that the defendant fired a shot from a gun at him—a gun that neither Officer Ferrigno nor any other witness ever actually observed in defendant’s possession, and which was found on the ground near defendant’s right foot, and not connected' to him by any forensic evidence (see Smith at 668). Under these circumstances, given defendant’s good faith basis to ask about the prior bad acts in the above lawsuits, the court fails to descry any identifiable prejudice to the parties or other reason to believe that the main issues at trial will be obscured or the jury confused as a result of the desired inquiry (see id.).
Officer Ferrigno’s Personnel File
Section 50-a of the Civil Rights Law, which governs the production of police personnel records,
“provides that, on a clear showing of facts sufficient to warrant the judge to request records for review, an in camera inspection is to be conducted and, if the court then determines that the records contain matter that is relevant and material in the action, such portions may be disclosed to the person who made the request” (Gissendanner at 551 [citation and internal quotation marks omitted]; see Civil Rights Law § 50-a [2], [3]).
Here, the court, having completed its in camera review, will disclose to defendant the SRR and PSS transcript relative to the “sustained” finding of misconduct that Officer Ferrigno *996 engaged in improper procedure for failing to call a supervisor as requested by civilian complainant Darnell Williams during a service call. Darnell Williams is the same complainant in Williams v City of Rochester discussed above. Williams, in addition to filing the above lawsuit, filed a civilian complaint with the PSS against Officer Ferrigno. The complaint alleged that the Officer used excessive force during his arrest, engaged in discourteous behavior, and failed to notify his supervisor at Williams’ request. The PSS, upon conducting its investigation, ultimately concluded that the allegations of “excessive force” and “discourteous behavior” were “unprovable.”[3]
The court finds that the remaining portions of the Officer’s personnel file do not merit disclosure. The file contains no sustained allegations whatsoever as to excessive or improper force.[4] Moreover, the sustained allegations of misconduct in the file do not, in this court’s estimation, “bear peculiar relevance *997 to the circumstances of the defendant’s case” (see Gissendanner, 48 NY2d at 549; see generally Puglisi, 44 NY2d 748) or otherwise provide the Officer a motive to falsify (see 48 NY2d at 549, citing Davis v Alaska, 415 US at 316). It is well settled that “the Constitution [does] not confer ‘a right in every case to impeach the general credibility of a witness through cross-examination about his past [misconduct]’ ” (id.). Nor is disclosure warranted under Brady v Maryland (373 US 83 [1963]) inasmuch as the court rejects defendant’s contention that confidential police personnel files are constructively in the custody and control of the prosecutor. Because the sustained allegations in the Officer’s file are unrelated to excessive or improper force and not specifically probative of truthfulness, disclosure of such allegations for cross-examination would be substantially more prejudicial than probative, or confusing or misleading to the jury (see generally People v Sandoval, 34 NY2d 371, 374 [1974] [nature and scope of cross-examination are left to the trial judge’s discretion]).
For all the above reasons, the court hereby authorizes release of the following documentation from Officer Ferrigno’s personnel file:
• The transcript of Officer Ferrigno’s PSS testimony regarding the instant case
• Officer Ferrigno’s SRR regarding the instant case
• Officer Ferrigno’s supporting deposition regarding the instant case
• The transcript of Officer Giancursio’s PSS testimony regarding the instant case
• The transcript of Officer Ferrigno’s PSS testimony regarding the PSS complaint filed by Benny Warr
• The transcript of Officer Ferrigno’s PSS testimony regarding the PSS complaint filed by Darnell Williams
• Officer Ferrigno’s SRR regarding the arrest of Darnell Williams in relation to Williams’ PSS complaint against the Officer
• The August 20, 2013 letter from the RPD to Officer Ferrigno regarding the final sustained finding of improper procedure for failing to notify a supervisor regarding the PSS complaint filed by Darnell Williams
It is hereby ordered that any and all documentation released pursuant to this decision shall not be reproduced or dis *998 seminated to any party, other than the defendant and his counsel, defendant’s counsels’ supervising attorneys, and any investigator assigned to this matter from the Monroe County Public Defender’s Office, as may be required to assist in the defense of this matter; and counsel for the People, counsels’ supervising attorneys, and any investigator assigned to this matter from the Monroe County District Attorney’s Office, as may be required to assist in the prosecution of this matter; and it is further ordered that this decision and its contents shall not be shared, reproduced, or disseminated to any other party(s), other than those expressly indicated in the above ordering paragraph as may be necessary, until the jury in the anticipated trial of this matter is sworn, at which time the court will proceed with the formal filing of this decision at the Monroe County Supreme and County Court Clerk’s Office; and it is further ordered that the entirety of the documentation released pursuant to this decision shall be promptly returned to the court at the conclusion of the anticipated trial of this matter where it shall be sealed and made available only upon request of the Appellate Division, Fourth Judicial Department, for any appellate review of this matter.

. The People were without standing to assert their opposition.

. In each of the above lawsuits, Officer Ferrigno was sued individually and in his capacity as an RPD officer. The other individuals named in the lawsuits have been omitted in the court’s reference herein because they are not relevant to the question before the court.

. Robinn Turner (plaintiff in Turner v City of Rochester) and Benny Warr (plaintiff in Warr v City of Rochester) also both filed respective civilian complaints against Officer Ferrigno in addition to their lawsuits. Turner’s PSS complaint alleged that Officer Ferrigno “failed to take police action.” Turner’s PSS complaint was deemed “unprovable” on December 6, 2010. The Officer’s personnel file contained no substantive information regarding Turner’s PSS complaint. Upon information and belief, the source of which is an electronic mail communication from a municipal attorney for the City, the entire PSS file regarding Turner’s complaint has been purged from the Officer’s personnel file pursuant to the City’s policy that PSS files resulting in findings of “exonerated” or “unprovable” are purged five years from the date the investigation is completed. Inasmuch as Turner, mindful of the contents of her federal court complaint, may also have filed an “excessive force” complaint against Officer Ferrigno with PSS, such is not reflected in the Officer’s personnel file. In any event, to the extent that any such complaint was filed, the allegations were presumably deemed “unprovable” or the Officer was “exonerated” based on the purging of Turner’s PSS file.
Warr’s PSS complaint against Officer Ferrigno alleged “unlawful arrest,” “excessive force,” and “discourteous behavior.” The PSS investigation resulted in a finding of “unprovable” as to “unlawful arrest”; “exonerated” as to “excessive force”; and “unprovable” as to “discourteous behavior.” Given the designated findings, although the Officer’s PSS file still contains the documentation regarding this investigation, the court finds disclosure of said documentation unwarranted. However, the court will disclose Officer Ferri-gno’s PSS transcript for impeachment purposes for the reasons previously mentioned in this opinion.

. While the court recognizes that whether allegations of misconduct are sustained or not sustained in the Officer’s personnel file is not discussed in Gissendanner, and related precedents, much less at all dispositive of the analysis, the court, having reviewed the Officer’s file, has thus considered its contents and conclusions in conjunction with the applicable law and totality of information provided by counsel as part of the court’s overall analysis and exercise of discretion in determining disclosure.