People v Harris (2025 NY Slip Op 51548(U))

[*1]

People v Harris

2025 NY Slip Op 51548(U)

Decided on September 30, 2025

Criminal Court Of The City Of New York, New York County

Coleman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 30, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York, Plaintiff,

against
Jabari Harris, Defendant.

CR-011881-25NY

Alvin L. Bragg, Jr., District Attorney, New York County (Samantha Torrellas of counsel), for plaintiff. 
Twyla Carter, The Legal Aid Society, New York City (Nora Dolan of counsel), for defendant.

Ilona B. Coleman, J.

The defendant moves this court to find the People's certificate of compliance and statement of readiness invalid and to dismiss this case pursuant to CPL §§ 30.30 (1) (b) and 170.30 (1) (e). Specifically, the defendant argues that the People failed to satisfy their discovery obligations under CPL § 245.20 in that they failed to timely provide gas chromatography records, police disciplinary records, and various other NYPD records. The People oppose, arguing that some of the material is not discoverable, that they exercised due diligence regardless of any lapses, and, ultimately, that they timely filed valid certificates of compliance and statements of readiness for trial.
Additionally, the defense moves for an order suppressing the fruits of the defendant's allegedly unlawful seizure; suppressing the results of a chemical test of the defendant's blood; suppressing noticed statements; suppressing or precluding unnoticed statements; directing supplemental discovery procedures; bifurcating hearings and trial; and precluding evidence of prior bad acts at trial. The People oppose.
I. Relevant Facts
The defendant is charged with violating VTL §§ 1192 (2), (3), and (1) for allegedly driving while intoxicated on April 13, 2025. The defendant was arraigned the same day, at which time the People served notice pursuant to CPL § 710.30 (1) (a). The defendant was released on their own recognizance, and the case was adjourned to June 4, 2025. 
Over the next few weeks, the People requested and obtained body-worn camera (BWC) footage, NYPD paperwork, activity logs, a signed supporting deposition, and DWI-related discovery, including video from the NYPD Intoxicated Driver Testing Unit. On May 30, 2025, the People produced those materials — a total of 100 items of discovery — to the defense. The People then contacted the arresting officer and requested assistance from their internal Litigation Support Unit (LSU) to obtain additional discoverable materials that the People had not received from NYPD. 
On June 4, 2025, the defendant appeared in Part E and was arraigned on the information. The People were not ready for trial, and the case was adjourned to July 28, 2025. Over the next [*2]few weeks, the People received additional materials from NYPD, and on June 23, 2025, they produced additional discovery to the defense. This discovery included radio runs, additional activity logs, law enforcement disciplinary records, and various pieces of NYPD paperwork. The People also filed and served a certificate of compliance (COC), certificate of readiness (COR), and automatic disclosure form (ADF). 
On July 28, 2025, the People answered ready for trial. The defense informed the court that they would be filing a motion challenging the People's COC, and the court set a motion schedule. That day, defense counsel emailed the People about possible outstanding discovery. Upon further investigation, the People confirmed that several of the items the defense requested — additional IDTU video, additional activity logs, dashcam footage, police notes and photographs, and Intoxilyzer calibration records from after the defendant's arrest — did not exist. The defense also did not confer with the People about several items they now claim are automatically discoverable: a roll call log, an interrupted patrol log, an arraignment card, a pre-arraignment notification report, and certifications for simulator solutions.
In the conferral email, defense counsel requested that the People provide additional records related to the calibration of the Intoxilyzer 9000 device that NYPD used to conduct a chemical test of the defendant's breath. Specifically, the defense asked for gas chromatography records for four simulator solutions that had been used in the Intoxilyzer's most recent biannual calibration, conducted about two months before the defendant's arrest. The People stated in response that they did not have the gas chromatography records in their possession and were unable to obtain them. The records are created by Guth Laboratories, a Pennsylvania-based private company that manufactures simulator solutions used in the calibration and operation of the Intoxilyzer. However, after the defendant filed this motion to dismiss, the People learned that the New York State Police had independently tested two of the simulator solutions at issue and possessed gas chromatography records for those solutions. The People obtained those records through a publicly accessible website and provided them to the defense.
Defense counsel also requested that the People provide additional law enforcement disciplinary materials. First, defense counsel requested Central Personnel Indexes (CPIs) for Officers Ignesgonzales and Graves. The People did not respond to this request. Second, defense counsel requested a full IAB log for Officer Moscoso, for which the People had provided only a summary. The People responded that the log involved a lost NYPD-issued Metrocard, had no bearing on the officer's credibility, and therefore is not discoverable. 
Finally, the defense requested IAB log attachments related to an allegation of excessive force involving Officer Graves. In response, the People expressed their opinion that the log itself contained all discoverable information related to the allegation, and they inquired which attachments the defense believed were relevant to the officer's credibility. Defense counsel did not respond to that inquiry. Upon receipt of the parties' filings, the court requested a copy of the IAB log for an in camera review. The log involves an internal investigation of a use of force in which Officer Graves and two others used a "forcible take-down" to effect an arrest of a person who was allegedly resisting arrest. At some point, that person claimed that the officers "slammed his head to the ground." The investigating IAB officer watched BWC from the arrest and wrote that "[a]t no point does it appear that the officers 'slam' the complainant to the floor." However, the log is categorized as "information and intelligence" and thus does not contain a formal finding. Rather, the log notes that the Civilian Complaint Review Board (CCRB) would review the relevant excessive force allegations. The log lists six attachments: three BWC [*3]videos, an audio recording, an NYPD snapshot of the arrestee, and a TRI Report related to the incident.
On August 8, 2025 the defendant filed this motion. In their motion, the defendant alleges that the People did not act with due diligence prior to filing their COC in that they failed to produce: (1) gas chromatography records for simulator solutions; (2) law enforcement disciplinary records; (3) a roll call log, an interrupted patrol log, an arraignment card, and a pre-arraignment notification report; and (4) certifications for simulator solutions.
II. Validity of the People's COC and COR
Under CPL § 245.50 (1), the People must affirm in their COC that, "after exercising due diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and disclose material and information subject to discovery, the prosecution has disclosed and made available all known material and information it has obtained subject to discovery." When a defendant challenges a COC, this court will first examine the alleged discovery lapses individually. If the court finds any discovery violations, the court will then examine the violations in the context of "the totality of the [People's] efforts to comply with the provisions of [Article 245]" to determine whether the People nevertheless "exercised due diligence and acted in good faith" in discharging their duties (CPL 245.50 [5], [6]; see also People v Bay, 41 NY3d 200, 211 [2023]).
1. Alleged Discovery Violations
CPL § 245.20 defines the discovery obligations the People must satisfy before filing a COC. The People must "disclose to the defendant" several categories of "material and information in the possession, custody or control of the prosecution" (CPL 245.20 [1]), but they must also make "a diligent, good faith effort" to obtain such discoverable material and information "where it exists but is not within [their] possession, custody or control" (CPL 245.20 [2]). Here, the defendant alleges that the People failed to satisfy their statutory obligations as to four categories of discoverable material: (1) gas chromatography records for simulator solutions; (2) law enforcement disciplinary records; (3) a roll call log, an interrupted patrol log, an arraignment card, and a pre-arraignment notification report; and (4) certifications for simulator solutions. The court will consider each of these in turn. Gas Chromatography for Simulator Solutions
The NY State Police gas chromatography records should have been disclosed prior to the filing of the People's COC. "[R]ecords of gas chromatography related to the certification of all reference standards" are specifically discoverable under CPL § 245.20 (1) (s), and the records were in the People's constructive possession because they were created and maintained by the NY State Police (see CPL 245.20 [2]). The People do not explain why they did not provide these records, but it appears from the conferral emails that the assigned ADA had not considered the need to provide gas chromatography records for simulator solutions used for calibration rather than for testing. The defendant has not articulated any prejudice from the delayed disclosure, and there is no indication of prosecutorial bad faith. Overall, though, this was a significant lapse. 
In contrast, the People were not required to obtain gas chromatography records from Guth Laboratories (People v Islas, 86 Misc 3d 1235[A] [Crim Ct, Bronx County 2025], People v Sanchez, 83 Misc 3d 671, 681 [Crim Ct, NY County 2024], People v Shirer, 84 Misc 3d 1242[A] [Crim Ct, Kings County 2024], People v Duran, 83 Misc 3d 1007, 1015 [Crim Ct, Bronx County 2024]). The People must make "a diligent, good faith effort" to obtain discoverable material not [*4]in their "possession, custody or control," but there are limits to the steps they must take (see CPL 245.20 [2]). For example, the statute states that the People are not required to subpoena materials if the defense is equally able to do so (id.). This suggests that the legislature did not intend to require the People to go to great lengths — such as spending hundreds or thousands of dollars to purchase the gas chromatography records at issue here — to obtain evidence that is equally available to the defense (Sanchez, 83 Misc 3d at 678-681). The defendant's analogy to purchasing grand jury transcripts is inapplicable, as those materials are uniquely within the prosecution's control. Here, contrary to the cases cited by the defense, the People have sufficiently explained why they did not obtain relevant records from Guth Laboratories. The court finds no lapse in diligence with respect to these records. 
Law Enforcement Disciplinary Records
As to the law enforcement disciplinary records, the People largely satisfied their obligations, and to the extent they did not, the lapse has no bearing on their overall diligence. CPL § 245.20 (1) (k) (iv) requires the disclosure of "[a]ll evidence and information that relate to the subject matter of the case . . . that tends to . . . impeach the credibility of a testifying prosecution witness." Where an allegation is relevant to a witness's credibility, the statute requires the disclosure of all underlying records (People v Coley, 240 AD3d 122, 135 [2025]).[FN1]
This court has previously held that CPL § 245.20 (1) (k) (iv) "require[es] the disclosure of all police disciplinary matters that result in either 'substantiated' and 'unsubstantiated' findings" (People v Zachary L., 86 Misc 3d 1209[A] [Crim Ct, NY County 2025]), but there is also appellate authority for the proposition that certain minor disciplinary matters are irrelevant to credibility and thus are not automatically discoverable (see People v Burrows, 237 AD3d 1481, 1482 [4th Dept 2025], lv denied, 43 NY3d 1054 [2025]; see also Coley, 240 AD3d at 136 [examining whether material at issue was "proper impeachment evidence" and citing People v Smith, 27 NY3d 652, 662 [2016]]). 
Here, it was reasonable for the People to conclude that the materials at issue were not discoverable. The defendant argues that the People should have disclosed IAB log 24-5523, which concerns a lost NYPD-issued Metrocard. On its face, this matter, like what the Appellate Division found not discoverable in Burrows (see 237 AD3d at 1482), seems to have no bearing on the officer's credibility. However, the People do not claim to have reviewed the log, and this court therefore orders the People to disclose the log to the defense within two weeks from the date of this decision. 
The defendant also argues that the People should have disclosed IAB log attachments related to an excessive force claim against Officer Graves. While the IAB has closed its investigation of the claim, it made no formal finding, instead referring the matter to the CCRB. There is no indication before this court that the CCRB has reached a disposition. The court must assume that the claim is pending, and all related materials must therefore be produced (see [*5]People v Soto, 80 Misc 3d 473, 478 [Crim Ct, NY County 2023]). That said, the information contained in the log, if accurate, supports the conclusion that the subject officers engaged in no wrongdoing. As such, it was reasonable for the People to have concluded that the material was not discoverable. It is also worth noting that, during the conferral process, the People asked which attachments the defense believed were discoverable, and defense counsel did not reply, arguably waiving the claim for the purposes of this motion (see CPL 245.50 [4] [c] [requiring that, before challenging a COC, defendant must show "good faith efforts to confer with the opposing party regarding the specific and particularized matters forming the basis for such challenge"]). Overall, the court finds that the failure to provide these IAB log attachments has no bearing on the People's overall diligence. However, the court also orders the People to produce certain attachments — specifically, the BWC footage, the audio recording, and the TRI Report — within two weeks from the date of this decision.
NYPD and Court Paperwork
Defense counsel's conferral emails [FN2]
do not mention the roll call log, interrupted patrol log, arraignment card, pre-arraignment notification report, or simulator solution certifications. Nor has defense counsel offered any explanation for the failure to confer about those items. Accordingly, the defendant failed to satisfy CPL § 245.50 (4) (c) as to these "specific and particularized matters," and the court will not consider them in its analysis of the People's overall diligence. 
Alternatively, these documents are either not discoverable or are irrelevant to the People's overall diligence. The defense has not provided sufficient reason to believe roll call logs or interrupted patrol logs are discoverable in this case, and they have not specified a subsection in the amended statute under which they would be discoverable. The arraignment card may technically be discoverable, but it is available to both parties in the court file and has no bearing on the People's diligence (Zachary L., 86 Misc 3d 1209[A]). Finally, it appears that a pre-arraignment notification report was not created in this case.
Certifications for Simulator Solutions
The simulator solution certifications are discoverable (CPL 245.20 [1] [s]), but the defendant failed to confer about these documents or explain the failure to confer (CPL 245.50 [4] [c]). Therefore, the court will not consider this alleged discovery violation when assessing the People's overall diligence. Nor do the interests of justice require otherwise: there is no chance that the defendant was prejudiced by the failure to disclose these documents, which are entirely standardized and state that the solution contains an appropriate percentage of ethyl alcohol. 
Nevertheless, if the People have not already provided the certifications to the defense, they are ordered to do so within two weeks from the date of this decision. 
2. The People's Diligence and Reasonableness
Even where the People have not satisfied all of their discovery obligations, their COC will not be invalidated where they have "exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the material" (CPL 245.50 [6]; see also Bay, 41 NY3d at 211). In determining whether the People acted with due diligence, the court must consider:
[T]he efforts made by the prosecutor to comply with [their discovery obligations]; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.
(CPL § 245.50 [5] [a]; see also Bay, 41 NY3d at 212). 
Applying these factors, this court concludes that the People exercised due diligence prior to filing their COC. The People made significant and prompt efforts to comply with their discovery obligations. The vast majority of discovery was disclosed prior to the People filing and serving their COC. The only significant outstanding pieces of discovery were the NY State Police gas chromatography records for two simulator solutions used to calibrate the Intoxilyzer two months prior to the defendant's arrest and testing. This prosecution — a DWI involving chemical testing — requires some technical expertise and is thus more complex than an average misdemeanor prosecution, and it is because of this complexity that the prosecutor appears to have been unaware of the records at issue. Still, the People should have been aware of these records, which are a standard, if somewhat obscure, part of a DWI prosecution. The People promptly rectified the error once they learned that the records were in their constructive possession. The only prejudice the defense has claimed is that the delay hindered their ability to have an expert independently analyze whether the Intoxilyzer was calibrated properly. Such a step is not common in misdemeanor DWI cases, though, and the defendant has not shown any actual intent to retain an expert. 
Overall, the People's sole lapse in meeting their discovery obligations, while significant, does not outweigh their efforts to satisfy their discovery obligations, which were prompt and extensive. The court finds that the People "exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the material required to be disclosed pursuant to [CPL § 245.20]" (CPL 245.50 [6]). The defendant's motion to deem the People's COC invalid is therefore denied. 
3. CPL § 30.30
In this case, in which the defendant is charged with an unclassified misdemeanor with a maximum sentence of 364 days and no felonies, the People must be ready for trial within ninety days of the commencement of the criminal action (CPL 30.30 [1] [b]). The parties agree that the 71 days between the defendant's arraignment on April 13, 2025 and the filing of the People's COC and COR on June 23, 2025 are chargeable to the People. 
Because the People's June 23 COC was valid, their COR was also valid, and the period from June 23 through the next court date is not charged to the People. The defense does not [*6]allege that any additional time is chargeable to the People. 
The court finds that only 73 days are charged to the People, and the defendant's motion to dismiss is therefore denied.
III. Omnibus Motion
First, the motion to suppress is granted to the extent that a Mapp/Huntley/Dunaway/VTL § 1194 hearing will be conducted before trial. The parties' allegations create factual disputes that must be resolved at an evidentiary hearing (see CPL 710.60 [4]). 
The motion for a voluntariness hearing is denied (see CPL 710.60 [3]; CPL 710.20). The People are directed to notify the defendant as soon as practicable upon deciding to use any unnoticed statement for impeachment or rebuttal purposes, and the defendant is granted leave to renew their motion to suppress upon receiving such notification (see CPL 710.40 [2], [4]).
The motion for a supplemental discovery order is denied. The People have demonstrated that they exercised due diligence and good faith in fulfilling their discovery obligations (see supra), and the defendant has provided no reason why supplemental discovery procedures would be appropriate here. Of course, the People have a continuing duty to disclose and are required as a matter of due process to investigate and turn over all materials favorable to the defense, especially where the defense has made a specific request (CPL 245.60, People v Vilardi, 76 NY2d 67, 77 [1990]). The defendant, however, has not demonstrated that court intervention is necessary to ensure the People's compliance with those obligations. 
Finally, the motions for statement preclusion, bifurcation, and preclusion of evidence of prior bad acts are referred to the trial court. 
This constitutes the decision and order of this court.
Dated: September 30, 2025
New York, NY
Ilona B. Coleman, J.C.C.

Footnotes

Footnote 1:The decision in Coley predates the most recent round of discovery reform legislation, passed in May 2025 and enacted in August 2025. Presumably, the legislature was aware of the court's holding that "all that is required for impeachment material to be 'related to the subject matter of the case' is that it relate to the credibility of a witness in the case" (Coley, 240 AD3d at 134), so the addition of that language to CPL § 245.20 (1) (k) should not be read as limiting the scope of subparagraph (k) (iv).

Footnote 2:Defense counsel filed a supplemental "affirmation of conferral" parroting the language of CPL § 245.50 (4) (c) but containing no specific factual allegations. The supplemental affirmation states that defense counsel "made timely efforts to confer . . . regarding the specific and particularized matters forming the basis for [the defendant's] motion," but this claim is at odds with the parties' conferral emails, which defense counsel attached as an exhibit to the motion to dismiss.