People v Sumler (2024 NY Slip Op 03307)

People v Sumler

2024 NY Slip Op 03307

Decided on June 14, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 14, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, MONTOUR, GREENWOOD, AND NOWAK, JJ.

979 KA 22-01360

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
NAQUAN SUMLER, DEFENDANT-APPELLANT. 

KEEM APPEALS, PLLC, SYRACUSE (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (BRADLEY W. OASTLER OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Matthew J. Doran, J.), rendered August 3, 2022. The judgment convicted defendant upon a jury verdict of rape in the first degree, burglary in the first degree, assault in the third degree, aggravated criminal contempt, criminal contempt in the first degree, burglary in the second degree, criminal contempt in the second degree, petit larceny and stalking in the fourth degree. 
It is hereby ORDERED that the case is held, the decision is reserved and the matter is remitted to Onondaga County Court for further proceedings in accordance with the following memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, rape in the first degree (Penal Law § 130.35 [1]), burglary in the first degree (§ 140.30 [2]), aggravated criminal contempt (§ 215.52 [1]), criminal contempt in the first degree (§ 215.51 [b] [v]), assault in the third degree (§ 120.00 [1]), burglary in the second degree (§ 140.25 [2]), and stalking in the fourth degree (§ 120.45 [1]). Defendant's conviction arises from two incidents. In the first, defendant went to the apartment of his ex-girlfriend (victim) in violation of a no-contact order of protection in favor of his children and took the victim's cell phone. In the second, approximately three months later, defendant went to the victim's apartment in violation of a no-contact order of protection in favor of the victim and forced her to have sexual intercourse with him.
Defendant contends that County Court abused its discretion in denying his motion to sever the counts arising from the first incident from the counts arising from the second incident because the underlying incidents were separate and unrelated, and the inclusion of counts from the first incident served as prejudicial propensity evidence tending to establish the second incident. We reject that contention. The counts were properly joined pursuant to CPL 200.20 (2) (b), and the court therefore "lacked statutory authority to grant defendant's [severance] motion" (People v Murphy, 28 AD3d 1096, 1097 [4th Dept 2006], lv denied 7 NY3d 760 [2006]; see People v Almodovar, 183 AD3d 1243, 1243 [4th Dept 2020]; People v Jones, 89 AD3d 1395, 1396 [4th Dept 2011], lv denied 18 NY3d 925 [2012]).
We reject defendant's contention that the court violated his right to a fair and impartial jury when it denied his request to remove a sworn juror based on comments that she made during defense counsel's cross-examination of the victim. As relevant here, a court must discharge a sworn juror upon a finding that the juror is "grossly unqualified to serve in the case" (CPL 270.35 [1]; see People v Buford, 69 NY2d 290, 298 [1987]). A juror is grossly unqualified "only 'when it becomes obvious that [the] particular juror possesses a state of mind which would prevent the rendering of an impartial verdict' " (Buford, 69 NY2d at 298; see People v Kuzdzal, 31 NY3d 478, 483 [2018]). Where, as here, the juror is merely "irritated with one of the attorneys or disagrees with the way the evidence is presented" (Buford, 69 NY2d at 299; see People v Batticks, 35 NY3d 561, 566 [2020]), discharge is not required. The court properly concluded after an inquiry of the juror in the presence of defense counsel that she was not [*2]"grossly unqualified to serve in the case" (CPL 270.35 [1]; see People v Pittman, 109 AD3d 1080, 1081 [4th Dept 2013], lv denied 22 NY3d 1043 [2013]).
Defendant contends that the evidence is legally insufficient to support the conviction of rape in the first degree, burglary in the first degree, aggravated criminal contempt, criminal contempt in the first degree, assault in the third degree, burglary in the second degree, and stalking in the fourth degree. Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that the evidence is legally sufficient to support the conviction (see People v Bleakley, 69 NY2d 490, 495 [1987]).
With respect to the first incident, defendant contends that he was guilty of, at most, criminal trespass in the second degree because, although he entered the victim's home in violation of an order of protection, he did not intend to commit any other crime therein. We conclude that the evidence presented to the jury is legally sufficient to support the conviction of burglary in the second degree inasmuch as it established "that when defendant entered the apartment, he intended to commit a crime in the apartment other than his trespass" (People v Lewis, 5 NY3d 546, 552 [2005]). A rational jury could have inferred beyond a reasonable doubt from the circumstances of defendant's entry, including the inference that defendant shut off the power to the apartment, that defendant intended to frighten and intimidate his family, in express violation of the order of protection prohibiting defendant from, inter alia, menacing, intimidating, or threatening his children. "Those acts are distinct from the trespass element of burglary and, when [as here are] prohibited by an order of protection . . . , can serve as predicate crimes for the 'intent to commit a crime therein' element of burglary" (id. at 552-553).
With respect to the second incident, defendant contends that the victim did not sustain a "physical injury" to support the counts of burglary in the first degree, aggravated criminal contempt, and assault in the third degree. The victim testified that defendant grabbed her left hand and bent her middle and ring fingers back so far that she thought her hand was broken, she rated her pain as a 7½ out of 10, and she received medical attention for her hand. As defined in the Penal Law, "[p]hysical injury" means "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). In determining whether a victim has sustained a physical injury, "[m]otive is relevant because an offender more interested in displaying hostility than in inflicting pain will often not inflict much of it" (People v Chiddick, 8 NY3d 445, 448 [2007]; see People v Anderson, 211 AD3d 1485, 1486 [4th Dept 2022], lv denied 39 NY3d 1077 [2023]). Here, the victim testified that the injuries were inflicted while defendant was trying to force her to have sex with him. Based on all the evidence, we conclude that a rational jury could have inferred beyond a reasonable doubt that the victim sustained a physical injury (see People v Abughanem, 203 AD3d 1710, 1712-1713 [4th Dept 2022], lv denied 38 NY3d 1031 [2022]). We have examined defendant's remaining challenges to the legal sufficiency of the evidence and conclude that they are without merit.
Viewing the evidence in light of the elements of the crimes of rape in the first degree, burglary in the first degree, aggravated criminal contempt, criminal contempt in the first degree, assault in the third degree, burglary in the second degree, and stalking in the fourth degree as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's further contention that the verdict with respect to those counts is against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). Where, as here, "witness credibility is of paramount importance to the determination of guilt or innocence, we must give great deference to the jury, given its opportunity to view the witnesses and observe their demeanor" (People v Streeter, 118 AD3d 1287, 1288 [4th Dept 2014], lv denied 23 NY3d 1068 [2014], reconsideration denied 24 NY3d 1047 [2014] [internal quotation marks omitted]; see People v McKay, 197 AD3d 992, 993 [4th Dept 2021], lv denied 37 NY3d 1060 [2021]). Here, the jury was "entitled to credit the testimony of the People's witnesses, including that of the victim, over the testimony of . . . defendant[ ]," and we perceive no reason to disturb the jury's credibility determinations in that regard (People v Tetro, 175 AD3d 1784, 1788 [4th Dept 2019]).
We further reject defendant's contention that he was deprived of a fair trial by the cumulative effect of various alleged errors raised on appeal (see People v Anderson, 220 AD3d 1223, 1227 [4th Dept 2023]; People v Evans, 217 AD3d 1461, 1461 [4th Dept 2023], lv denied 40 NY3d 996 [2023]). The sentence is not unduly harsh or severe.
Defendant further contends that the court erred in denying his motion to dismiss the indictment on statutory speedy trial grounds (see CPL 30.30). In particular, he contends that the People's failure to disclose existing disciplinary records of potential law enforcement witnesses for use as impeachment materials (see CPL 245.20 [1] [k]) rendered any certificate of compliance (COC) filed pursuant to CPL 245.50 improper and thereby rendered any declaration of trial readiness made pursuant to CPL 30.30 illusory and insufficient to stop the running of the speedy trial clock. As the Court of Appeals recently stated in People v Bay, "the key question in determining if a proper COC has been filed is whether the prosecution has 'exercis[ed] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery' " (People v Bay, 41 NY3d 200, 211 [2023], quoting CPL 245.50 [1]). Due diligence "is a familiar and flexible standard that requires the People to make reasonable efforts to comply with statutory directives" (id. [internal quotation marks omitted]). "[W]hether the People made reasonable efforts sufficient to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented" (id. at 212). "[C]ourts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id.). Although the statute does not require a " 'perfect prosecutor,' " the Court emphasized that the prosecutor's good faith, while required, "is not sufficient standing alone and cannot cure a lack of diligence" (id.).
The People bear the burden of establishing that they exercised due diligence and made reasonable inquiries prior to filing the COC (see id. at 213). "If the prosecution fails to make such a showing, the COC should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed" (id.).
Here, in denying the motion to dismiss, the court determined that the People complied with the discovery mandates of CPL 245.20. As we recently held, however, the statute "does not authorize the use of a screening panel to decide what evidence and information should be disclosed, or to otherwise act as a substitute for the disclosure of the required material" (People v Rojas-Aponte, 224 AD3d 1264, 1266 [4th Dept 2024]), and the People in this case used such a screening committee to review law enforcement disciplinary records. The court therefore erred in denying the motion on the basis that the People complied with their discovery obligations under CPL 245.20 (see id. at 1255-1256). In light of its determination, the court did not consider whether the People exercised due diligence within the meaning of CPL 245.50, that is, whether they made " 'reasonable efforts' to comply with [the] statutory directives," and " 'ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery' " (Bay, 41 NY3d at 211). We note that, "[i]n Bay, the Court of Appeals made clear that whether the People exercised due diligence is not to be examined in a vacuum. To that end, the non-exclusive list of factors articulated by the Court in that case calls for a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require us to conclude that a COC is improper if the People miss even one item of discovery" (People v Cooperman, 225 AD3d 1216, 1220 [4th Dept 2024], citing Bay, 41 NY3d at 212). We therefore hold the case, reserve decision, and remit the matter to County Court to determine the motion after further submissions, if warranted.
All concur except Montour and Nowak, JJ., who dissent and vote to hold the case, reserve decision and remit the matter in accordance with the following memorandum: We agree with the majority's conclusion that it was error for County Court to deny defendant's motion to dismiss the indictment pursuant to CPL 30.30 on the basis that the People complied with CPL article 245. Specifically, we agree with the majority that CPL 245.20 does not authorize the use of a screening panel to review law enforcement disciplinary records "to decide what evidence and information should be disclosed, or to otherwise act as a substitute for the disclosure of the required material" (People v Rojas-Aponte, 224 AD3d 1264, 1266 [4th Dept 2024]). We would further conclude, however, that because the People provided only a summary of the disciplinary records of two law enforcement witnesses after deeming that such records were relevant to the witnesses' credibility and did not disclose the actual records, the People failed to fulfill their discovery obligations (see CPL 245.20 [1] [k] [iv]). In light of the People's failure to comply [*3]with the discovery mandates of CPL 245.20, we would remit the matter for a determination whether the People exceeded the time within which they were required to announce readiness for trial. Insofar as we do not believe that remittal for a determination of due diligence is appropriate, we dissent.
Effective January 1, 2020, sweeping legislative changes transformed discovery and speedy trial practices in criminal courts throughout New York. Subdivision (1) of CPL 245.20 broadly provides that the People "shall disclose to the defendant . . . all items and information that relate to the subject matter of the case." At issue in this appeal is subparagraph (iv) of paragraph (k), which specifically requires disclosure of "[a]ll evidence and information . . . that tends to . . . impeach the credibility of a testifying prosecution witness" (CPL 245.20 [1] [k] [iv]). Paragraph (k) further provides that the information "shall be disclosed whether or not such information is recorded in tangible form and irrespective of whether the prosecutor credits the information." Subdivision (2) of CPL 245.20 imposes on the People the duty to "make a diligent, good faith effort to ascertain the existence of material or information discoverable under subdivision one of this section and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control," and further provides that "all items and information related to the prosecution of a charge in the possession of any . . . law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL 245.20 [2]). Moreover, pursuant to subdivision (7) of CPL 245.20, "[t]here shall be a presumption in favor of disclosure when interpreting . . . subdivision one of section 245.20" (CPL 245.20 [7]; see People v Bonifacio, 179 AD3d 977, 978 [2d Dept 2020]). Also relevant to this appeal is the repeal of former Civil Rights Law § 50-a, effective June 12, 2020 (see generally Matter of New York Civ. Liberties Union v City of Syracuse, 210 AD3d 1401, 1403 [4th Dept 2022]).
The legislative reforms tie the People's fulfillment of the above discovery obligations to their readiness for trial under CPL 30.30. To that end, CPL 245.50 requires that, "[w]hen the prosecution has provided the discovery required by [CPL 245.20 (1)], . . . it shall serve upon the defendant and file with the court a certificate of compliance," which "shall state that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (CPL 245.50 [1]). Subdivision (3) of CPL 245.50 provides that, as a general rule, "the prosecution shall not be deemed ready for trial for purposes of [CPL 30.30] until it has filed a proper certificate" (CPL 245.50 [3]; see also CPL 30.30 [5]).
This appeal presents two distinct violations of CPL 245.20 (1) (k) (iv) by the People. First, with respect to two potential law enforcement witnesses, the People provided a brief summary of the officers' disciplinary history rather than the underlying records. Second, with respect to several potential law enforcement witnesses, the People indicated that, although the officers had disciplinary records, the People had determined that such records were not impeachment material inasmuch as the records allegedly had "no bearing on the witness'[s] truthfulness or credibility." As a result, the People refused to turn over those records.
With respect to the first issue, we agree with defendant that he was entitled to the disciplinary records of the potential law enforcement witnesses, and that the summaries provided by the People were improper (see e.g. Matter of Jayson C., 200 AD3d 447, 449 [1st Dept 2021]). "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (People v Roberts, 31 NY3d 406, 418 [2018] [internal quotation marks omitted]). Here, the statute requires that the prosecution turn over to the defense "[a]ll evidence and information . . . that tends to . . . impeach the credibility of a testifying prosecution witness" (CPL 245.20 [1] [k] [iv]). That information must be turned over "irrespective of whether the prosecutor credits the information" (id.). Significantly, CPL 245.20 uses the term "summary" only twice and neither instance occurs in paragraph (k). The word occurs once in CPL 245.20 (1) (f), which requires that the prosecution disclose a "written statement of facts and opinions to which [an] expert is expected to testify and a summary of the grounds for each opinion" (emphasis added), and once in CPL 245.20 (1) (l), which requires that the prosecution provide "[a] summary of all promises, rewards and inducements made to, or in favor of, persons who may be called as witnesses, as well as requests for consideration by persons who may be called as witnesses and copies of all documents relevant to a promise, reward or inducement" (emphasis added). [*4]"[W]here the legislature includes particular language in one section of a statute but omits it in another section of the same [statute], it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion" (Hart v City of Buffalo, 218 AD3d 1140, 1144 [4th Dept 2023] [internal quotation marks omitted]). Here, the absence of any reference to a summary in CPL 245.20 (1) (k) makes clear that the legislature did not intend to permit the People to fulfill their discovery obligation under this section through the use of a summary (see generally People v Thomas, 33 NY3d 1, 6-7 [2019]).
With respect to the second issue, we would conclude that it was also improper for the People to refuse to disclose the disciplinary records of potential law enforcement witnesses that they unilaterally deemed irrelevant. Whether something is potential impeachment material is not for the People to decide, but rather for defense counsel. Indeed, the Court of Appeals has long recognized "that the potential impeachment value of a witness'[s] prior statement could best be determined by the 'single-minded counsel for the accused' " (People v Banch, 80 NY2d 610, 615 [1992]). There is no reason the impeachment value of an officer's disciplinary record should be treated any differently. If the People believe that certain disciplinary records should not be disclosed because they do not involve an officer's credibility or truthfulness, the best practice would be to seek a protective order from the court pursuant to CPL 245.70 (1). That would provide defense counsel with notice that certain records were being withheld, and the court would be able to conduct an in camera review to determine whether such records should be turned over after having the benefit of arguments from each side. Further, even if such records are turned over—bearing in mind the presumption favoring disclosure contained within CPL 245.20 (7)—it does not necessarily follow that they are admissible at trial. Both the People and defendant would be free to argue that the records and any questions relating to such records are irrelevant, but the parties would be placed on an equal footing with respect to knowledge that such records exist and what information they contain.
Instead of following that permissible practice, the People here unilaterally chose not to disclose disciplinary records of potential witnesses. We would conclude, on the basis of the People's failure to comply with their discovery obligations, that the People did not file a valid certificate of compliance, and therefore any announcement of readiness pursuant to CPL 30.30 was illusory and insufficient to stop the running of the speedy trial clock (see CPL 245.50 [3]; see also CPL 30.30 [5]).
The majority, however, relying on People v Bay (41 NY3d 200 [2023]), concludes that the matter must be remitted for a determination whether the People made " 'reasonable efforts' to comply with [the] statutory directives," and " 'ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery' " (Bay, 41 NY3d at 211). We reject the majority's position. Notably, Bay had no occasion to address the circumstance presented here—i.e., "where the People know discovery exists but nonetheless certify compliance without disclosing it," or "where the People know that some material exists but nonetheless unilaterally choose to withhold it, deeming it 'irrelevant,' 'immaterial,' or 'not discoverable' " (People v Marte, 82 Misc 3d 528, 532, 533 [Crim Ct, Queens County 2023]).
The plain language of CPL article 245 with respect to due diligence is instructive. CPL 245.20 (2) provides that "[t]he prosecutor shall make a diligent, good faith effort to ascertain the existence of material or information discoverable under [CPL 245.20 (1)]" (emphasis added). Similarly, CPL 245.50 requires the People to file a certificate of compliance stating "that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (CPL 245.50 [1] [emphasis added]; see Bay, 41 NY3d at 211).
The requirement of due diligence and reasonable efforts is linked to the People's obligation to determine whether mandatory discovery material and information exists; it is not linked to the People's attempts to comply with the statutory requirements once such material or information has been found. That due diligence refers to the People's efforts to identify the existence of discoverable material is, we submit, clear from Bay, in which the Court of Appeals identifies "relevant factors for assessing due diligence," including "how obvious any missing material would likely have been to a prosecutor exercising due diligence, . . . and the People's response when apprised of any missing discovery" (Bay, 41 NY3d at 212). In addition, as noted [*5]above, the discovery statute itself states that there is "a presumption in favor of disclosure when interpreting . . . section 245.20 [1]" (CPL 245.20 [7]). Here, the People improperly failed to disclose material after its existence was ascertained.
In light of our conclusion, we would hold the case, reserve decision, and remit the matter to County Court to determine, in the first instance, whether the People had exceeded the time under CPL 30.30 to announce readiness for trial.
Entered: June 14, 2024
Ann Dillon Flynn
Clerk of the Court