People v Caldiero (2024 NY Slip Op 50747(U))

[*1]

People v Caldiero

2024 NY Slip Op 50747(U)

Decided on June 18, 2024

Criminal Court Of The City Of New York, Queens County

Licitra, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 18, 2024
Criminal Court of the City of New York, Queens County

The People of the State of New York

against
Caldiero, Defendant.

Docket No. CR-034291-23QN

For the People: Melinda Katz, District Attorney of Queens County (by Joseph Cunningham)
For Mr. Caldiero: Queens Defenders (by Bernardo Caceres)

Wanda L. Licitra, J.

Before validly stating ready for trial, the prosecution must file a certificate of automatic discovery compliance. Criminal Procedure Law § 245.50[1] defines a proper such certificate, and it requires the prosecution to certify two things. First, that the prosecution has exercised "due diligence" and made "reasonable inquiries" to "ascertain the existence" of discoverable material. (C.P.L. § 245.50[1]). And second, that after doing so, the prosecution has "made available all known material and information subject to discovery." (C.P.L. § 245.50[1]).
Appellate law holds that where the prosecution does not, in fact, exercise due diligence or make reasonable inquiries to ascertain the existence of discoverable material, their certificate claiming otherwise is improper. (People v. Hamizane, 80 Misc 3d 7, 11 [App. Term, 2d Dep't 2023] [certificate improper because "none of the People's submissions . . . showed that the People had attempted to obtain any police disciplinary records, or attempted to find out whether any such records existed"]; People v. Rahman, 79 Misc 3d 129[A], at *2 [App. Term, 2d Dep't 2023] [certificate improper because the prosecution, in fact, "failed to exercise due diligence and make reasonable inquiries to ascertain the existence of FDNY/EMS records"]; People v. LaClair, 79 Misc 3d 8, 11 [App. Term, 2d Dep't 2023] [certificate improper because the prosecution, in fact, "failed to exercise due diligence and did not make reasonable inquiries to ascertain the identities of all law enforcement witnesses related to the case"]; People v. Guzman, 75 Misc 3d 132[A], at *3 [App. Term, 2d Dep't 2022] [certificate improper because the prosecution, in fact, "failed to exercise due diligence and did not make reasonable inquiries to obtain [a dashcam] video"]). The Court of Appeals' decision in People v. Bay is an example of this first group of cases. (See People v. Bay, 41 NY3d 200 [2023]); see also People v. Marte, 82 Misc 3d 528 [Crim. Ct., Queens County 2023] [explaining so in depth]).
Similarly, appellate law also holds that a certificate cannot "be deemed complete" until all known discovery material is in fact "actually produced"—i.e., "made available" (C.P.L. § 245.50[1])—to the defense. (People ex rel. Ferro v. Brann, 197 AD3d 787, 788 [2d Dep't 2021]; People v. Carter, 80 Misc 3d 127[A], at *2-*3 [App. Term, 2d Dep't 2023]; see also People v. [*2]Luna, 2024 NY Slip Op. 24146, at *2 [App. Term, 2d Dep't 2024] [in which the prosecution "provided no explanation" for their failure to make reasonably diligent "inquiries" regarding police misconduct records and "also failed to explain how, as stated in their COC, they had 'disclosed and made available to the defendant(s) . . . all known material and information that is the subject of discovery,' as they did not receive the requested [police misconduct] reports" from the police department until after filing the certificate] [emphasis added]). That makes sense. As our lower courts have put it, the prosecution cannot certify they "turned over 'all known material and information,' while at the same time not actually turning over all known material and information." (People v. Ashraf, 80 Misc 3d 1223[A], at *3 [Crim. Ct., Richmond County 2023] [internal citations omitted]; People v. Pennant, 73 Misc 3d 753, 767 [Dist. Ct., Nassau County 2021] [same]; People v. Quinlan, 71 Misc 3d 266, 271 [Crim. Ct., Bronx County 2021] [same]; People v. Adrovic, 69 Misc 3d 563, 574 [Crim. Ct., Kings County 2020 [same]).
The Court of Appeals is clear about how courts must proceed where, as here, a C.P.L. § 30.30 motion calls the prosecution's certificate into question. On such a motion, the prosecution "bear[s] the burden" of "establishing" that they did, "in fact," complete the tasks they certified in their certificate. (See Bay, 41 NY3d at 213). For instance, where the prosecution's certification that they exercised "due diligence" is at issue, they must "establish[] that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing" it. (Id.). "If the prosecution fails to make such a showing, the [certificate] should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed." (Id.).
Ignoring this clear mandate from the Court of Appeals, the prosecution here argues instead that the defense bears the burden of establishing that the certificate was not proper. They assert that "[s]ome courts" have "erroneously" placed the burden on the prosecution to defend their certificate, and they specifically point to this court's decision in People v. Wiaffe, 80 Misc 3d 1202[A] [Crim. Ct., Queens County 2023], as an example. But that is not only the rule of this court, it is also the rule of the Court of Appeals: upon a "CPL 30.30 motion to dismiss on the ground" that the prosecution improperly filed a certificate of compliance, "the People bear the burden" of "establishing" that they did, "in fact," file a proper one. (Bay, 41 NY3d at 213 [emphasis added]).[FN1]

The court now turns to the certificate in this case. It must first consider whether the prosecution establishes that, overall, they in fact diligently and reasonably ascertained the existence of discoverable material. The defense argues they did not, pointing to impeachment evidence that the prosecution either disclosed belatedly or never. This includes police misconduct records for a potential testifying prosecution witness, Officer Jack Cleary, whom a person previously accused of "discriminat[ion]," as well as impeachment information for the complainant, who apparently has an active Suffolk County warrant out for her arrest for falsely reporting an incident to police in 2018. It also includes the complainant's NYPD "DAS report" or NYPD Domain Awareness System report, a type of police document that this court has previously explained is a veritable treasure trove of impeachment information. (See People v. Amir, 76 Misc 3d 1209[A], at *4 [Crim. Ct., Bronx County 2022]; accord People v. Sylvestre, 81 Misc 3d 1051, 1059 [Crim. Ct., Kings County 2023]).
"Cross-examination is the principal means by which the believability of a witness and the truth of [their] testimony are tested," and impeachment "is a particular form of cross-examination whose purpose is, in part, to discredit the witness and persuade the fact finder that the witness is not being truthful." (See generally People v. Smith, 27 NY3d 652, 659-60 [2016] [internal quotation marks omitted]). There are several methods of impeachment. "One traditional method" is questioning the witness about prior criminal, vicious, or immoral conduct bearing on credibility. (Id.).
The automatic discovery statute requires the prosecution to diligently ascertain the existence of, and disclose, "[a]ll evidence and information, including that which is known to police . . . that tends to . . . impeach the credibility of a testifying prosecution witness." (C.P.L. § 245.20[1][k][iv]). The statute does not distinguish between types of impeachment material. (See id. [requiring the People to produce "[a]ll" impeachment evidence for their testifying witnesses]). And unlike the laxer constitutional standards, the discovery statute jettisons any concern about whether prosecutors, courts, or anyone else believes the impeachment information to be "material." (See id. [the statute says "[a]ll" impeachment evidence]; see also People v. Best, 76 Misc 3d 1210[A], at *5 [Crim. Ct., Queens County 2022] [noting that the statute "jettisons the 'materiality' requirement"]; NY State Assembly, Mem. in Supp. of Legislation, A4360A [noting that the then-proposed statute's language "abandons the requirement that only 'materially' exculpatory information need be disclosed"]). Instead, the statute mandates that the People disclose "all" information that tends to impeach the credibility of a testifying prosecution witness, period. (C.P.L. § 245.20[1][k][iv]; see also Matter of Jayson C., 200 AD3d 447, 449 [1st Dep't 2021] [correctly observing that the discovery statute "broadly requires disclosure of all impeachment evidence"]). "All," to be very clear, "means all." (People v. Francis, 75 Misc 3d 1224[A], at *2 n.2 [Crim. Ct., Bronx County 2022]; see also Hamizane, 80 Misc 3d at 10-11 ["CPL 245.20[1][k] encompasses 'All evidence and information'" which tends to impeach]; People v. Bravo, CR-002662-22QN, at *7-*8 [Crim. Ct., Queens County Aug. 17, 2022] [Johnson, J.] ["The statute requires the production of ALL [impeachment] material."]).
Under C.P.L. § 245.20[1][k], the statute treats impeachment material (alongside other favorable material) with heightened importance above all other discovery. It mandates that "[i]nformation under this subdivision shall be disclosed whether or not such information is [*3]recorded in tangible form." (C.P.L. § 245.20[1][k]). It mandates that it "shall be disclosed ... irrespective of whether the prosecutor credits the information." (Id.). And it mandates that the prosecution "shall disclose the information expeditiously upon its receipt and shall not delay disclosure if it is obtained earlier" than the normal statutory "time period for disclosure." (Id.). It also specifically emphasizes that the prosecution must "endeavor to ensure that a flow of information is maintained between the police ... and [the district attorney's office] sufficient to place within [the prosecutor's] possession or control ... any evidence or information discoverable" as impeachment evidence. (C.P.L. § 245.55[1]).
It is with the statute's heightened attention in mind that the court must analyze whether the prosecution establishes that they, in fact, diligently and reasonably ascertained the existence of discoverable material in this case.
The prosecution admits that they intentionally refused to ascertain the existence of police records relating to Officer Cleary's alleged misconduct matter. They made this choice even though they readily admit that their office "has a Law Enforcement Officer Witness ('LEOW') Unit" which is "responsible for obtaining information and documents from the NYPD and the Civilian Complaint Review Board ('CCRB') related to civil lawsuits, as well as allegations and findings of misconduct, against law enforcement officers that could constitute potential impeachment material." The prosecution argues that they intentionally failed to ascertain the existence of Officer Cleary's records because, in their view, evidence impeaching a witness's general credibility does not "relate to the subject matter of the case." As such, they chose only to disclose a five-sentence summary of Officer Cleary's alleged misconduct. The court rejects the prosecution's choices here as unreasonable and not diligent.
New York City criminal courts routinely hold that police misconduct records impeach an officer's credibility and relate to the subject matter of the case. (E.g., Jayson C., 200 AD3d at 448-49; People v. Rodriguez, 77 Misc 3d 23 [App. Term, 1st Dep't 2022]; People v. Abisdid, 208 N.Y.S.3d 460 [Crim. Ct., Kings County 2024] [Robinson, J.]; People v. Juzwa, 81 Misc 3d 1221[A] [Crim. Ct., Queens County 2023] [Gonzalez, J.]; People v. Markovtsii, 81 Misc 3d 225 [Crim. Ct., Kings County 2023] [Hayes-Torres, J.]; People v. Eleazer, 78 Misc 3d 1222[A] [Crim. Ct., NY County 2023] [Maldonado-Cruz, J.]; People v. Payne, 79 Misc 3d 827 [Crim. Ct., Bronx County 2023] [Bowen, J.]; People v. Toussaint, 78 Misc 3d 504 [Crim. Ct., Queens County 2023] [Licitra, J.]; People v. Rugerio-Rivera, 77 Misc 3d 1230[A] [Crim. Ct., Queens County 2023] [Gershuny, J.]; People v. Goggins, 76 Misc 3d 898 [Crim. Ct., Bronx County 2022] [Morales, J.]; People v. Martinez, 75 Misc 3d 1212[A] [Crim. Ct., NY County 2022] [Rosenthal, J.]; People v. Edwards, 74 Misc 3d 433 [Crim. Ct., NY County 2021] [Weiner, J.]; People v. McKinney, 71 Misc 3d 1221[A] [Crim. Ct., Kings County 2021] [Kitsis, J.]; People v. Rodriguez, CR-002613-20BX [Crim. Ct., Bronx County May 20, 2021] [Johnson, J.]). (This is but a small sample of the many decisions holding so in the past four years. As Judge Lawrence Marks noted in his recent treatise, police misconduct records have "generated an outsized amount of written decisions," but "with limited exceptions this material is now subject to disclosure as part of the prosecution's initial discovery obligation." Hon. Lawrence K. Marks, 7 NY Prac., New York Pretrial Criminal Procedure § 7:1 [2d ed. June 2024 update].)
Impeachment evidence is related to the "subject matter of the case," (C.P.L. § 245.20[1]), and related to "the prosecution of the charge," (C.P.L. § 245.20[2]), for the same reason: it "directly relates to whether the factfinder should believe the witness's testimony." (Edwards, 74 Misc 3d at 441). A "police witness's prior bad act" is "proper fodder" for undermining that [*4]officer's credibility. (Smith, 27 NY3d at 661). "Consequently, with respect to every listed potential police witness, it [is] the People's obligation to disclose whether or not disciplinary records exist, and to provide the defense with copies of any existing records." (Hamizane, 80 Misc 3d at 10-11 [citing Jayson C., 200 AD3d at 449; Rodriguez, 77 Misc 3d at 24]).
In the face of all these decisions, the prosecution here reaches to opinions from elsewhere in the state—none of which are controlling [FN2]
—to argue the opposite. But that the prosecution even heads down this path does not evince a diligent effort to ascertain the existence of discoverable information. Rather, it evinces an effort to withhold information. That is not consistent with the discovery statute's mandate, which requires that the prosecution presume that material should be disclosed. (See C.P.L. §§ 245.20[1], [7]). That mandate is explicit: the statute commands a "presumption in favor of disclosure when interpreting ... subdivision one of section 245.20." (C.P.L. § 245.20[7]). As a result, "to interpret article 245 narrowly is to flout the Legislature's unmistakable intent that it be interpreted broadly, in favor of disclosure." (Edwards, 74 Misc 3d at 439). "Whenever there is any debate about turning over a piece of material, the legislature explicitly instructed the People to presume the material is discoverable." (Rugerio-Rivera, 77 Misc 3d 1230[A], at *2). None of this is new. As this court noted one year ago:
The People's argument . . . advances a very different understanding of their responsibilities. In their view, so long as they can make a "colorable legal argument[]" that some material does not fall within the statute, they will withhold it. (See Pr. Suppl. Resp. at 12). But the statutory presumption means the People should not withhold evidence just because they can make a "colorable legal argument" that it does not fall within the statute. Instead, the People should disclose evidence any time there is a "colorable legal argument" that it does fall within the statute. The discovery statute [*5]requires the People to engage in information sharing, not information suppression. And they are to build mechanisms to support the free flow of information, not construct arbitrary walls that block access. The People's approach here "appear[s] more bent on constricting the discovery statute, rather than acceding to the command of the Legislature that '[t]here shall be a presumption in favor of disclosure when interpreting ... subdivision one of section 245.20.'" (Payne, 2023 NY Slip Op. 23101, at *2 [quoting C.P.L. § 245.20[7]]).
(People v. Torres, 79 Misc 3d 1204[A], at *9 [Crim. Ct., Queens County 2023]). Given the importance of impeachment material, on this basis alone, the court would conclude that the prosecution did not diligently or reasonably ascertain the existence of discoverable material in this case.
But here, there is more. Before filing their certificate of compliance, the prosecution failed to ascertain the fact that the complainant had an active warrant out for her arrest in Suffolk County for making a false report to police. The prosecution does not explain how they did not ascertain the existence of this fact prior to certifying compliance, which bears substantially on the complainant's credibility. In describing their efforts before filing the certificate, the prosecution simply states that they "ran a RAP sheet for the Complainant, and it was determined that she had no criminal conviction history." They then state that they have since "uncovered information" about the "active warrant." No further information is given as to why the prosecution only "ran a RAP sheet" (or even what that specifically means, like what database was queried, who runs that database, or what that database consists of) prior to filing the certificate. Thus, the court is left without any record on which to conclude that simply "running a RAP sheet" is a reasonably diligent investigation into whether a complainant may be suspected of prior crimes. Additionally, the prosecution does not provide any detail on how they "uncovered" that the complainant has an active warrant out for her arrest—a fact that one would think would be easily ascertainable to a law enforcement agency like the Queens District Attorney's Office.
Nor is the court satisfied on the prosecution's record that they reasonably and diligently ascertained the existence of a DAS report for the complainant. At first blush, the prosecution states that they "confirm[ed]" with the arresting officer "the non-existence of several documents that MTA NYPD does not create, like DAS reports." (This case arises from an MTA NYPD arrest.) But when giving more detail about that conversation with this officer, the prosecution states that the officer informed them "in his experience with the MTA NYPD they do not run DAS reports, and no DAS reports were run for either of the individuals involved in this matter." Both statements cannot be true. Either the officer ran a DAS report and found that none existed for the complainant, or the officer did not run a DAS report and cannot say whether it exists. Read together, it appears the officer informed the prosecution that they did not look for a DAS report, not that one did not exist. In any event, this confusing and contradictory record is not the type on which the court can find that the prosecution reasonably and diligently ascertained the existence of a DAS report for the complainant [FN3]
—a document that this court recognizes as a [*6]major source of impeachment material. (See Amir, 76 Misc 3d 1209[A], at *4).
Finally, contrary to the prosecution's position, it is reasonable to think that a police officer's misconduct in investigating prior criminal cases may be favorable in defending against their investigation in this case. (See generally People v. Jawad, 78 Misc 3d 1217[A] [Crim. Ct., Queens County 2023] [Licitra, J.]; accord People v. Abisdid, 208 N.Y.S.3d 460, 468 [Crim. Ct., Kings County 2024] [Robinson, J.] ["[O]fficers' disciplinary records may be relevant to issues other than impeachment of a testifying witness, such as negating a defendant's guilt or supporting a potential defense."]; People v. Tavares, 81 Misc 3d 1245[A] [Crim. Ct., Bronx County 2024] [Bowen, J.] ["It is not magical reasoning to perceive that [police misconduct records] could be of significant consequence to negate a defendant's guilt, provide a basis to suppress evidence, or support a potential defense even if the prosecution decided not to call the officer in question as a witness."]; People v. Jackson, 79 Misc 3d 832 [Crim. Ct., NY County 2023] [Rosenthal, J.]; Matter of E.S., 79 Misc 3d 681 [Fam. Ct., NY County 2023] [Kingo, J.]). Thus, it is not reasonable for the prosecution to categorically refuse to even review "an investigating officer's [prior] misconduct in investigating criminal cases," simply because they will not be a prosecution witness. (People v. Davis, 82 Misc 3d 1253[A], at *3 [Crim. Ct., Queens County 2023]). "Such a categorical rule would be at war with the People's statutory burden" to address all the subsections of C.P.L. § 245.20[1][k]. (People v. Luna, 80 Misc 3d 1217[A], at *6 [Crim. Ct., Queens County 2023]).[FN4]

In sum, the certificate of compliance was not proper. The prosecution commenced this case on November 22, 2023. Their statement of readiness within ninety days thereafter was illusory, as it was not accompanied or preceded by a proper certificate of discovery compliance. That is because the prosecution did not, in fact, exercise due diligence and make reasonable inquiries to ascertain the existence of discoverable material, as their certificate claimed. It is now the prosecution's burden to prove that any time "should be excluded" and to provide the necessary evidence to substantiate their claims. (E.g., People v. Wearen, 98 AD3d 535, 537 [2d Dep't 2012]; People v. Reinhardt, 193 AD2d 1122, 1122 [4th Dep't 1993]). They claim no exclusions. Still, it is apparent from the face of the papers that this motion was filed on April 3, 2024, which tolls the clock. (See C.P.L. § 30.30[4][a]). Thus, 133 days are attributable to the prosecution. That exceeds what the law allows. (C.P.L. § 30.30[1][b]). The case must be dismissed.
Any remaining issues are moot.
The foregoing constitutes the order and decision of the court.
Dated: June 18, 2024
Queens, NY
____________________
Wanda L. Licitra, J.C.C.

Footnotes

Footnote 1:The prosecution's argument on this point relies on outdated caselaw from 2016 to assert that a certificate of compliance "should be presumed truthful and accurate." That is no longer the law. Indeed, for any question of readiness now, "[u]nder CPL 30.30[5] and [5-a], this presumption no longer exists." (People v. Ramirez-Correa, 71 Misc 3d 570, 573 [Crim. Ct., Queens County 2021]; see also People v. Aquino, 72 Misc 3d 518, 521 n.2 [Crim. Ct., Kings County 2021] ["The court notes that this provision abrogates the previous standard where a statement of readiness was presumed to be truthful and accurate."]; People v. Hines, 70 Misc 3d 1212[A], at *4 [Crim. Ct., Bronx County 2021] ["No such presumption exists under the new discovery scheme."]; People v. Surgick, 73 Misc 3d 1212[A], at *7 [City Ct., Albany County 2021] ["By declining to include any presumption in CPL § 30.30(5), the legislature unambiguously abrogated the presumption" that a statement of readiness is presumed valid]; People v. Lobato, 66 Misc 3d 1230[A], at *5 [Crim. Ct., Kings County 2020] ["Now, however, the earlier standard that a statement of readiness is presumed to be truthful and accurate has been replaced."]; People v. Villamar, 69 Misc 3d 842, 848 [Crim. Ct., NY County 2020] ["No longer can the court presume that a statement of readiness is truthful and accurate."]).

Footnote 2:Here in Queens Criminal Court, we are bound by the Appellate Term, Second Department, for the 2nd, 11th, and 13th Judicial Districts and the Court of Appeals. Our Appellate Term has not weighed in on this issue. While in some instances appellate decisions from other departments may be binding in Queens, that is not true when the other departments are split. (See Mountain View Coach Lines, Inc. v. Storms, 102 AD2d 663 [2d Dep't 1984]). And here, other appellate courts—none of which are directly binding on this court—are split. The Appellate Division is split between the First Department, (see Matter of Jayson C., 200 AD3d 447 [1st Dep't 2021]; see also People v. Toussaint, 78 Misc 3d 504, 510-12 [Crim. Ct., Queens County 2023] [explaining the predicate holding in Jayson C. that summaries of police misconduct records are not sufficient under the automatic discovery statute]), and the Third and Fourth Departments, (see People v. McCarty, 221 AD3d 1360 [3d Dep't 2023]; People v. Johnson, 218 AD3d 1347 [4th Dep't 2023]). (That said, the Fourth Department has since moderated its position. See People v. Sumler, 2024 NY Slip Op. 03307 [4th Dep't June 14, 2024] [noting that the prosecution could not use a "screening panel" to review "law enforcement disciplinary records" to "decide what evidence and information should be disclosed," implying that some such records could be discoverable]; People v. Rojas-Aponte, 224 AD3d 1264, 1266 [4th Dep't 2024] [same]). Decisions from the Appellate Term, Second Department, for the 9th and 10th Judicial Districts are also split, too. (Compare People v. Luna, 2024 NY Slip Op. 24146 [App. Term, 2d Dep't Apr. 11, 2024]; People v. Hamizane, 80 Misc 3d 7 [App. Term, 2d Dep't 2023], with People v. Weisman, 81 Misc 3d 129[A] [App. Term, 2d Dep't 2023]).

Footnote 3:As an aside, given that the DAS is "one of the world's largest surveillance systems" and includes information from other police databases, arrests, and complaints, it is difficult to think that such a report would not exist for someone who has an open warrant out for her arrest. (See People v. Amir, 76 Misc 3d 1209[A], at *3 [Crim. Ct., Bronx County 2022] [internal quotation marks omitted]). This only compounds the confusing record here.

Footnote 4:The Fourth Department's decision in People v. Cooperman does not foreclose this holding. (See People v. Cooperman, 225 AD3d 1216, 1219 [4th Dep't 2024]). In that case, the question of whether "other portions of CPL 245.20[1][k] applied to the [police] personnel files at issue" was "not preserve[d]" for "review." (Id.). Therefore, it was not a part of that court's holding.